THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI

IN THE MATTER OF THE
SEARCH OF:
142 MCCANN ROAD
POWERSITE, MISSOURI 65731

Case No. 19-SW-2126 DPR

### AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Brian Martin, a Task Force Officer (TFO) with the Homeland Security Investigations, Immigration and Customs Office (HSI/ICE), being first duly sworn, hereby depose and state as follows:

1. I have been employed as a deputy sheriff with the Barry County, Missouri, Sheriff's Office, since 1997 and a sworn law enforcement officer since 1985. I am assigned as a TFO with HSI/ICE and a member of the Southwest Missouri Cyber Crimes Task Force (SMCCTF) headquartered in Joplin, Missouri. As an investigator with these entities, I have been tasked to investigate computer crimes, including violations against children. I have gained expertise in the conduct of such investigations through training in seminars, classes, and everyday work related to conducting these types of investigations. I have attended trainings provided by the Internet Crimes Against Children Program, the Federal Bureau of Investigation's Regional Computer Forensic Laboratory, and the Missouri Internet Crimes Against Children (ICAC) Task Force. I have authored, executed, or assisted in over 200 search warrants on the state and federal level.

2. As part of this affiant's duties with HSI/ICE, this affiant investigates criminal violations relating to child exploitation, child pornography, and coercion and enticement, in violation of 18 U.S.C. §§ 2251, 2252, 2252A, and 2422.

3. The statements in this affidavit are based on my personal observations, training and

experience, investigation of this matter, and information obtained from other agents and witnesses. Because this affidavit is being submitted for the limited purpose of securing a search warrant, this affiant has not included each and every fact known to me concerning this investigation. This affiant has set forth the facts necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 2251, 2252, and 2252A are currently located at 142 McCann Road, Powersite, Taney County, Missouri 65731, a location within the Western District of Missouri.

4. This affidavit is in support of an application for a search warrant for evidence, fruits, and instrumentalities of the foregoing criminal violations, which relate to the knowing possession, receipt, distribution, and/or production of child pornography. The property to be searched is described in the following paragraphs and fully in Attachment A. This affiant requests the authority to search and/or examine the seized items, specified in Attachment B, as instrumentalities, fruits, and evidence of crime.

5. This affiant has probable cause to believe that evidence of violations of 18 U.S.C. §§ 2251, 2252, and 2252A, involving the use of a computer, in or affecting interstate commerce, to receive, distribute, possess, and/or produce child pornography, are located in and within the aforementioned property described below. Thus, as outlined below, and based on my training and experience, there is probable cause to believe that evidence, fruits, and/or instrumentalities of the aforementioned crimes are located in this property.

## STATUTORY AUTHORITY

6. This investigation concerns alleged violations of 18 U.S.C. §§ 2251, 2252, and 2252A relating to material involving the sexual exploitation of minors:

    a. 18 U.S.C. § 2251(a) prohibits a person from employing, using, persuading,

2

inducing, enticing, or coercing a minor to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct, if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce, or if such visual depiction actually was transported in or affecting interstate commerce.

b. 18 U.S.C. § 2252 prohibits a person from knowingly transporting, shipping, receiving, distributing, reproducing for distribution, or possessing any visual depiction of minors engaging in sexually explicit conduct when such visual depiction was either mailed or shipped or transported in interstate or foreign commerce by any means, including by computer, or when such visual depiction was produced using materials that had traveled in interstate or foreign commerce.

c. 18 U.S.C. § 2252A prohibits a person from knowingly mailing, transporting, shipping, receiving, distributing, reproducing for distribution, or possessing any child pornography, as defined in 18 U.S.C. § 2256(8), when such child pornography was either mailed or shipped or transported in interstate or foreign commerce by any means, including by computer, or when such child pornography was produced using materials that had traveled in interstate or foreign commerce.

**DEFINITIONS**

7. The following definitions apply to this Affidavit and its Attachments:

a. The term "minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

b. The term "sexually explicit conduct," 18 U.S.C. § 2256(2)(A)(i-v), is defined as actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-

3

Case 6:19-sw-02126-DPR   Document 1-1   Filed 09/12/19   Page 3 of 16

genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic areas of any person.

c.   The term "visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

d.   The term "computer," as defined in 18 U.S.C. § 1030(e)(1), means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

e.   The term "child pornography," as defined in 18 U.S.C. § 2256(8), means any visual depiction, including any photograph, film, video, picture, or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where:

   1.   the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;

   2.   such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or

   3.   such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

4

f.  The terms "records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, and painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, and photocopies), mechanical form (including, but not limited to, phonograph records, printing, and typing) or electrical, electronic, or magnetic form (including, but not limited to, tape recordings, cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks (DVDs), Personal Digital Assistants (PDAs), Multi Media Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical, or electronic storage device).

g.  "Internet Service Providers" (ISPs), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, email, remote storage, and co-location of computers and other communications equipment.

h.  "Internet Protocol address" (IP address), as used herein, is a code made up of numbers separated by dots that identifies a particular computer on the Internet. Every computer requires an IP address to connect to the Internet. IP addresses can be dynamic, meaning that the ISP assigns a different unique number to a computer every time it accesses the Internet. IP addresses might also be static, if an ISP assigns a user's computer a particular IP address which is used each time the computer accesses the

Internet.

    i.    "Domain names" are common, easy to remember names associated with an IP address. For example, a domain name of "www.usdoj.gov" refers to the IP address of 149.101.1.32. Domain names are typically strings of alphanumeric characters, with each level delimited by a period.

    j.    "Website" consists of textual pages of information and associated graphic images. The textual information is stored in a specific format known as Hyper-Text Mark-up Language (HTML) and is transmitted from web servers to various web clients via Hyper-Text Transfer Protocol (HTTP).

## BACKGROUND ON COMPUTERS AND CHILD PORNOGRAPHY

8.    Based on this affiant's knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom this affiant has had discussions, computers, computer technology, and the Internet have revolutionized the manner in which child pornography is produced and distributed.

9.    Computers basically serve five functions in connection with child pornography: production, communication, distribution, storage, and social networking.

10.    With digital cameras, images of child pornography can be transferred directly onto a computer. A modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection. Through the Internet, electronic contact can be made to literally millions of computers around the world.

11.    The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography. The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown tremendously within the last several years.

6

These drives can store thousands of images at very high resolution.

12. The Internet affords individuals several different venues for meeting one another, obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion.

13. Individuals also use online resources to retrieve and store child pornography, including services offered by Internet Portals such as Yahoo!, Google, and Hotmail, among others. The online services allow a user to set up an account with a remote computing service that provides e-mail services as well as electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer with access to the Internet. Evidence of such online storage of child pornography is often found on the user's computer. Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer and/or other electronic devices in most cases.

14. As with most digital technology, communications made from a computer are often saved or stored on that computer. Storing this information can be intentional, for example, by saving an e-mail as a file on the computer or saving the location of one's favorite websites in "bookmarked" files. Digital information can also be retained unintentionally. Traces of the path of an electronic communication may be automatically stored in many places, such as temporary files or ISP client software, among others. In addition to electronic communications, a computer user's Internet activities generally leave traces in a computer's web cache and Internet history files. A forensic examiner often can recover evidence that shows whether a computer contains peer-to-peer software, when the computer was sharing files, and some of the files that were uploaded or downloaded. Computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the Internet. Electronic files downloaded to a hard drive can be stored for years at little or no cost. Even when such files have

been deleted, they can be recovered months or years later using readily available forensic tools. When a person "deletes" a file on a home computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space -- that is, in space on the hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space -- for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file. Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or "cache." The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages. Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits.

## CELLULAR PHONES AND CHILD PORNOGRAPHY

15. Based on this affiant's knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom this affiant has had discussions, cellular phones have likewise revolutionized the manner in which child pornography is produced and distributed.

16. Cellular phones ("cell phones") are exceptionally widespread. The Central Intelligence Agency estimates that in 2016 there were 416 million cell phone subscribers in the United States. Cell phones increasingly offer features such as integrated digital cameras, the ability to store hundreds of digital images, and the ability to access and browse the Internet.

8

17. In this affiant's training and experience, the ready availability and personal nature of cell phones has led to their frequent use in the commission of child pornography offenses. Individuals with a sexual interest in children will often use their cell phone to browse the Internet and to distribute, receive, and store child pornography files. Individuals producing child pornography will also frequently use the integrated digital camera within a cell phone to produce the images, and then store the images both on the phone and on other devices – such as computers and computer storage media.

18. Cell phones, like other computer systems, will frequently retain data relating to activities, such as Internet browsing history, digital images, and other digital data, that can remain stored for a long period of time.

### SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS AND CELL PHONES

19. Searches and seizures of evidence from computers and cell phones commonly require agents to download or copy information from the devices and their components, or seize most or all computer items (computer hardware, computer software, and computer-related documentation) to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following two reasons:

   a. Computer storage devices (like hard disks, diskettes, tapes, laser disks, magneto opticals, and others) can store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names. This requires searching authorities to examine all the stored data that is available in order to determine whether it is included in the warrant that authorizes the search. This sorting process can take days or weeks, depending on the volume of data stored, and is generally difficult to accomplish fully on-site.

b. Searching computer systems and cell phones for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of a computer system is an exacting scientific procedure that is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

20. In order to fully retrieve data from a computer system, the analyst needs all magnetic storage devices as well as the central processing unit ("CPU"). In cases involving child pornography where the evidence consists partly of graphics files, the monitor(s) may be essential for a thorough and efficient search due to software and hardware configuration issues. In addition, the analyst needs all the system software (operating systems or interfaces and hardware drivers) and any applications software that may have been used to create the data (whether stored on hard drives or on external media).

21. Furthermore, because there is probable cause to believe that the computer, its storage devices and cell phones are all instrumentalities of crimes, within the meaning of 18 U.S.C. §§ 2251 through 2256, and they should all be seized as such.

**BACKGROUND OF INVESTIGATION**

22. On March 25, 2019, and March 27, 2019, Google initiated CyberTips 47964092 and 48032728, respectively, with the National Center for Missing and Exploited Children (NCMEC)

after Google had discovered a file containing possible child pornography stored on their servers in a Google Photos account.

23. Google is an American multinational corporation that specializes in Internet-related services and products, which include online advertising technologies, search engine, cloud computing, software, and hardware. Google's main office is located in Mountain View, California. Once an individual registers an account with Google, the user has access to a variety of free and paid for Google services and applications such as Gmail, Google Photos, Blogger, YouTube, and Google Drive. Google Photos is a free application that enables users to upload and backup an unlimited quantity of image and video files to their account, and the files may be accessed from any Internet capable device. A Google Photos account also allows other people to view the data as long as they have the account name and password.

24. In both CyberTips, Google reported that the account user name is "RC Burns," associated with email address "Lobo77de77Noche@gmail.com." The user's alternate email address is "lobo77de77noche@ymail.com." The recent IP address used prior to Google discovering the images on March 24, 2019, were AT&T Wireless IP addresses, which are not unique; however, on January 31, 2019, the user connected several times throughout the day using IP address 173.202.178.166, a Centurylink IP address. The user also connected several times using IP address 75.121.133.123, a Centurylink IP address, between December 17, 2018, and December 20, 2018.

25. CyberTip 47964092 was initiated by Google on March 25, 2019, at 14:57:48 GMT. There was one file submitted with the report. Google did not review the file prior to its submission to NCMEC. This affiant contacted Google to determine if the file had been viewed after the CyberTip was created, and Google verified they had viewed the file. This affiant reviewed the file, which depicted a prepubescent female, approximately five years old, sitting with her legs

open, displaying her vagina and breasts to the camera.

26. CyberTip 48032728 was initiated on March 27, 2019, at 14:16:11 GMT. There was one file submitted with the report. Google did not review the file prior to its submission to NCMEC. This affiant contacted Google to determine if the file had been viewed after the CyberTip was created, and Google verified they had viewed the file. This affiant reviewed the file, which depicted a prepubescent female, approximately five years old, sitting with her legs open, displaying her vagina and breasts to the camera. The image appears to be the same as the image from CyberTip 47964092.

27. This affiant sent an investigative subpoena to Centurylink for subscriber information for IP address 173.202.178.166 on January 31, 2019, and IP address 75.121.133.123 between December 17, 2018, and December 20, 2018. On May 9, 2019, Centurylink responded to the subpoenas and identified the subscriber of the IP addresses as Robby Burns, with a service address of 142 McCann Road, Powersite, Missouri 65731.

28. This affiant reviewed the Missouri Department of Revenue Driver License records and located a Robby Christopher Burns with the address of 142 McCann Road, Powersite, Missouri 65731. Taney County, Missouri, Deputy Sheriff Danny Stottle reported that the Forsyth, Missouri, Police Department had recently conducted a traffic stop of Burns for failure to display license plates while he was driving a white Cadillac.

29. On May 21, 2019, Deputy Stottle conducted surveillance of 142 McCann Road and observed a white Cadillac parked on the property. Deputy Stottle observed that the Cadillac now had license plates affixed to it that were registered to a red Buick, which was parked next to the Cadillac. The plates were registered to Marie Burns, 142 McCann Road, Powersite, Missouri 65731.

## PROBABLE CAUSE

30. Based on the above facts, this affiant believes probable cause exists for the issuance of a warrant to search the premises described more fully in Attachment A for (1) property that constitutes evidence of the commission of a criminal offense; (2) contraband, the fruits of a crime, or things otherwise criminally possessed; and/or (3) property designated or intended for use or which is or has been used as the means of committing a criminal offense, namely possible violations of 18 U.S.C. §§ 2251, 2252, and 2252A including, but not limited to, the items listed in Attachment B.

Further Affiant Sayeth Naught.

_____
Brian Martin
Task Force Officer
Homeland Security Investigations

Sworn to and subscribed to me this 12th day of September 2019.

_____
DAVID P. RUSH
United States Magistrate Judge
Western District of Missouri

Case 6:19-sw-02126-DPR   Document 1-1   Filed 09/12/19   Page 13 of 16

## ATTACHMENT A
### DESCRIPTION OF PROPERTY TO BE SEARCHED

The property at 142 McCann Road, Powersite, Taney County, Missouri 65731, contains a brown and off white, single wide, mobile home. The address, 142 McCann Road, Powersite, Missouri, 65731, is posted beside the front door of the mobile home.



14

## ATTACHMENT B
## Particular Things to be Seized

1. Computers and computer equipment, cellular phones, digital storage devices, tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, flash drives, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, computer software, hardware and software operating manuals, tape systems and hard drive and other computer related operation equipment, digital cameras, scanners in addition to computer photographs, Graphic Interchange formats and/or photographs, undeveloped photographic film, slides, or other visual depictions of such Graphic Interchange format equipment, and the data stored within these materials, which has been used or may be used for the following:

   a. to visually depict minors engaged in sexually explicit conduct, child pornography, and/or child erotica;
   b. to advertise, transport, distribute, receive, collect and possess visual depictions of minors engaged in sexually explicit conduct, child pornography, and/or child erotica; and
   c. to show or evidence a sexual interest in minors or desire or motive to collect or distribute visual depictions of minors engaged in sexually explicit conduct or child pornography.

2. Records, documents, writings, and correspondence with others pertaining to the possession, receipt, distribution, transportation or advertisement of visual depictions of minors engaged in sexually explicit conduct or child pornography.

3. Any and all photographs, compact disks, DVD's, motion picture films (including but not limited to 8mm film), super 8 video, video cassette tapes, production and reproduction equipment, motion picture cameras, video cameras, video cassette recorders, and other photographic and video recording equipment used to produce or reproduce photographs, motion picture films, or video cassettes, cameras, documents, books, records, ledgers, correspondence, receipts, magazines and other materials reflecting the purchase, sale, trade, transmission, advertising, transport, distribution, receipt and possession of any visual depiction of minors engaged in sexually explicit conduct or to show or evidence a sexual interest in minors or desire

or motive to collect, distribute, and receive visual depictions of minors engaged in sexually explicit conduct or child pornography.

4. Any and all magazines, books, photographs, letters, written narratives and computer text files or any other printed or electronic matter to show or evidence a sexual interest in minors or desire or motive to advertise, distribute, transport, receive, collect or possess visual depictions of minors engaged in sexually explicit conduct or child pornography.

5. Any and all records showing or bearing indicia of the use, ownership, possession, or control of the residential/business premises described as and items contained therein, including visual depictions of minors engaged in sexually explicit conduct, child pornography, computer equipment, accessories, telephone(s), modem(s), or such records, whether stored on paper, in files, invoices, bills, leases, deeds, permits, licenses, telephone bills, tax receipts, or other documentation, or on magnetic media such as tape, cassette, disk, diskette or on memory storage devices such as optical disks, or storage media.

6. Envelopes, letters, and other correspondence, including, but not limited to, electronic mail, chat logs, IRC logs, ICQ logs, all usage records for distributed file sharing technologies, and electronic messages, offering to distribute and receive visual depictions of minors engaged in sexually explicit conduct or child pornography, or to show or evidence a sexual interest in minors or desire or motive to advertise, distribute, transport, receive, collect and possess visual depictions of minors engaged in sexually explicit conduct or child pornography.

7. Records or other items that evidence ownership or use of computer equipment found in the above residence, including, but not limited to, correspondence, sales receipts, and bills for Internet access, all handwritten notes and handwritten notes in computer manuals.

8. Keys, storage combinations, passwords, and paperwork which indicate any other storage containers or facilities that could contain evidence of collection, advertising, transport, distribution, receipt, or possession of visual depictions of minors engaging in sexually explicit conduct or child pornography.